UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| WILLIAM H. PERKINS, JR., | Case No. 3:16CV1669 |
| Petitioner, | JUDGE BENITA Y. PEARSON |
| | Magistrate Judge George J. Limbert |
| v. | |
| LYNEAL WAINWRIGHT, Warden,[1] MARION CORRECTIONAL INSTITUTION, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Respondent. | |

Pro se Petitioner William H. Perkins, Jr. ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Dkt. #1. Petitioner seeks relief for alleged constitutional violations that occurred in conjunction with his Seneca County, Ohio Court of Common Pleas convictions for: aggravated trafficking in drugs, aggravated possession of drugs, aggravated robbery with a firearm specification, complicity to tampering with evidence, tampering with evidence, and receiving stolen property. ECF Dkt. #1; ECF Dkt. #9-1 at 31-33, 43-44. On June 22, 2016, Petitioner executed his federal habeas corpus petition and on June 29, 2016, the petition was filed with this Court. ECF Dkt. #s1, 1-1. On December 12, 2016, Respondent Lyneal Wainwright, Warden of the Marion Correctional Institution (Respondent") where Petitioner is housed, filed a motion to dismiss Petitioner's § 2254 federal habeas corpus petition based upon its untimely filing. ECF Dkt. #9. On February 17, 2017, Petitioner filed a response. ECF Dkt. #12.

For the following reasons, the undersigned RECOMMENDS that the Court GRANT Respondent's motion to dismiss (ECF Dkt. #9) and DISMISS Petitioner's federal habeas corpus petition in its entirety with prejudice based upon Petitioner's untimely filing of the petition.

---

[1] Jason Bunting was the Warden at Marion Correctional Institution when Petitioner filed the instant federal habeas corpus petition, but Lyneal Wainwright is now the Warden at this institution. *See* http://www.drc.ohio.gov/mci. The docket of this case should reflect Lyneal Wainwright as the Warden of Marion Correctional Institution and the proper Respondent in this case. Rule 2(a) of the Rules Governing § 2254 Cases in the United States District Courts.

## I. RELEVANT FACTUAL AND PROCEDURAL HISTORY

### A. Synopsis of the Facts

The Third District Court of Appeals of Ohio set forth the relevant facts on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999): ECF Dkt. #13-1 at 112-121.

> {¶ 3} Perkins[sic] first trial was held during six days in December 2008. Two witnesses, Andrea Ford and Angela Wolfe, testified as accomplices after entering into plea agreements with the State. Ms. Ford testified that she was engaged to Perkins and that they had a child together. She further testified that she, Perkins, and Ms. Wolf made plans to rob The Medicine Shoppe in order to obtain pills containing oxycodone. On June 23, 2008, Ms. Ford used Ms. Wolfe's car to drive Perkins to Tiffin, and she waited outside in the car while he took his gun and went into the pharmacy. After the robbery, they drove back to their trailer in Clyde where they placed the pills into baggies for sale. Ms. Ford also testified about burning the evidence from the robbery and obtaining spray paint in order to cover up the maroon front bumper of the car that was used for the crime.
>
> {¶ 4} Ms. Wolfe testified that she sold a portion of the pills that Perkins had obtained after the robbery, including a sale to an individual who was acting as a confidential informant for the Tiffin Police Department. Subsequently, she made several more trips to Perkin's[sic] and Ms. Ford's trailer, with the knowledge of the police, in order to obtain additional information. Based on this information, a search warrant for the trailer was obtained and the police recovered oxycodone, drug paraphernalia, and additional evidence.
>
> {¶ 5} Other witnesses also testified, including the two employees from The Medicine Shoppe who described the robber by the clothes he was wearing and his approximate height and weight. They could not positively identify the robber because of the concealing clothing he wore, but they testified that he was armed with a handgun.
>
> \*\*\*\*
>
> {¶ 11} During cross-examination in the first trial, defense counsel presented Ms. Ford with several letters that she had written to Perkins while she was in jail. Ms. Ford acknowledged that she had written the letters and admitted that she had stated in the letters that they were both innocent of the robbery of The Medicine Shoppe. Ms. Ford was asked to read certain highlighted portions of the letters. On redirect examination, Ms. Ford affirmed that she was now telling the truth at trial, and that the statements of innocence in the letter were not the truth.
>
> {¶ 12} In the second trial, defense counsel again attempted to impeach Ms. Ford through the use of her letters to Mr. Perkins. Counsel handed Ms. Ford the letters and she acknowledged that she had written them while in jail before she had changed her plea. However, when defense counsel asked her to read the highlighted portions, the State objected, arguing that the letters were hearsay and were being offered to prove the truth of the matter asserted therein.2 [Court footnote: Both counsel then

>     approached the bench, but the conversation was not on the record.]The trial court
>     sustained the objection. (Second Trial, Tr. Vol. II, p. 433). Defense counsel then
>     continued with cross-examination:
>
>     Q. * * * During the time that you were in jail, before you saw-before-before you
>     decided to cooperate with the State, what was your position on the charges against
>     you?
>
>     A. That we were innocent.
>
>     Q. I'm sorry?
>
>     A. That we were innocent.
>
>     Q. When you say "we" who's "we"?
>
>     A. [Perkins] and I.
>
>     Q. How often did you express that?
>
>     A. Quite a bit. If anybody asked me I would tell them that we were innocent.

ECF Dkt. #9-1 at 156-157, 159-160.

### B.  **Procedural History**

#### 1.  **State Trial Court**

On August 27, 2008, the Seneca County Grand Jury indicted Petitioner for: one count of breaking and entering in violation of Ohio Revised Code ("ORC") § 2903.01(A); one count of aggravated robbery in violation of ORC § 2911.01(A)(1) with a firearm specification; one count of complicity to tampering with evidence in violation of ORC §§ 2923.03(A)(2) and 2921.12(A)(1); one count of aggravated trafficking in drugs in violation of ORC § 2925.03(A)(2) and (C)(1)(a); one count of receiving stolen property in violation of ORC § 2913.51; one count of aggravated possession of drugs in violation of ORC § 2925.11(A)(C)(1)(a); one count of tampering with evidence in violation of ORC § 2921.12(A)(1); and one count of incidents of corrupt activity in violation of ORC § 2925.03. ECF Dkt. #9-1 at 10-16.

On September 17, 2008, the Seneca County Grand Jury issued a separate indictment charging Petitioner with receiving stolen property in violation of ORC § 2913.51. ECF Dkt. #9-1 at 19. This charge was the same as that charged in the original indictment, except that it added the word "knowingly" to the phrase "did [knowingly] dispose property of another." *Id.* The State of Ohio then moved to dismiss the receiving stolen property count in the original indictment and moved for

joinder of the separately issued indictment with interlineation of the charge in the September 17, 2008 indictment into count five of the original indictment. *Id.* at 20-25. The trial court consolidated the two cases for trial and ordered the interlineation. *Id.* at 26.

On December 29, 2008, the trial court issued a journal entry indicating that the jury found Petitioner not guilty of breaking and entering, but guilty of aggravated trafficking in drugs and aggravated possession of drugs. ECF Dkt. #9-1 at 29-33. The trial court declared a mistrial as to the other counts as the jury could not reach a unanimous verdict on the remaining counts. *Id*. at 33. The State of Ohio thereafter moved to dismiss the incidents of corrupt activity count and the trial court granted that motion. *Id*. at 34-35.

On January 20, 2009, Petitioner, through counsel, moved for a new trial in the trial court, asserting that the jury's not guilty verdict on the breaking and entering count and its inability to reach a verdict on the aggravated robbery charge, which both concerned the taking of drugs from the Medicine Shoppe, were inconsistent with the jury's guilty verdict on the aggravated drug trafficking and drug possession convictions since the source of the drugs were allegedly from the Medicine Shoppe. ECF Dkt. #9-1 at 37-38. The State of Ohio filed a response brief on January 28, 2009. *Id*. at 39-41. On February 27, 2009, the trial court issued a judgment entry, finding that Petitioner's motion for a new trial was untimely filed. ECF Dkt. #9-1 at 41.

Also on February 27, 2009, the trial court issued a judgment entry indicating that the trial had proceeded on the remaining counts and the jury had found Petitioner guilty of aggravated robbery with the firearm specification, and guilty of complicity to tampering with evidence, receiving stolen property, and tampering with evidence. ECF Dkt. #9-1 at 43-44.

On March 5, 2009, the trial court sentenced Petitioner to an overall term of imprisonment of 15 years and 15 months, with a maximum term of 5 years of post-release control. ECF Dkt. #9-1 at 46-49. On the same date, Petitioner filed a pro se motion for a new trial in the trial court, asserting that his case should have been transferred to another jurisdiction. *Id*. at 55-57. The State of Ohio opposed the motion. *Id*. at 59-60. Petitioner replied and the State of Ohio filed a supplemental brief in opposition to the motion for new trial. *Id.* at 61-65.

On March 6, 2009, the trial court issued a judgment entry nunc pro tunc as to sentencing, keeping the 15 year, 15 month sentence, but reflecting that Petitioner was found not guilty of breaking and entering and the incidents of corruption count was dismissed. *Id*. at 50-54.

On June 5, 2008, the trial court issued a judgment entry ruling on various motions, including the granting of Petitioner's motion to withdraw his motion for a new trial. ECF Dkt. #9-1 at 66-67.

### 2. **Direct Appeal**

On April 3, 2009, Petitioner, through new counsel, filed a notice of appeal to the Ohio Third District Court of Appeals. ECF Dkt. #9-1 at 68. In his appellate brief, Petitioner asserted the following assignments of error:

1. The trial court erred when it improperly limited Mr. Perkin's cross-examination of Andrea Ford, in violation of his rights as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and by Section 10, Article I of the Ohio Constitution.

2. The trial court erred in imposing a sentence that contains an order of restitution without identification of the individual or entity entitled to receive such restitution.

*Id.* at 85-97. The State of Ohio filed an appellate brief on October 2, 2009. *Id*. at 112-121. Petitioner thereafter filed a reply brief. *Id*. at 145-153.

On December 21, 2009, the Ohio appellate court affirmed the judgment of conviction, but remanded the case for the trial court to state the specific amounts of restitution to be paid to the recipients that had been stated at the sentencing hearing. ECF Dkt. #9-1 at 167-171.

### 3. **Trial Court Resentencing Entries**

On December 29, 2009, the trial court issued a nunc pro sentencing entry to comply with the Ohio appellate court's remand. ECF Dkt. #9-1 at 151-152. The trial court ordered Petitioner to pay restitution and specified the amounts to be paid to the victim, the Charles Crane Agency and to the Ohio Victim of Crime Compensation fund. *Id*. at 170.

Petitioner filed a motion to resentence in the trial court on January 14, 2010, requesting that the trial court resentence him and issue a final appealable order. *Id.* at 172. The State of Ohio filed a response. *Id*. at 180-181. On January 25, 2010, the trial court issued another nunc pro tunc sentencing entry indicating that Petitioner had been convicted by a jury finding of guilt and that its

entry was a final appealable order. *Id*. at 182-186.

Petitioner appealed this entry, asserting that the trial court erred when it amended the restitution order without holding a hearing and erred when it entered the restitution order designating an insurance company as a restitution recipient. ECF Dkt. #9-1 at 188-191. The Ohio appellate court issued a decision on October 10, 2010, finding that a restitution hearing was not required, but an insurance company is not a victim authorized to receive restitution. *Id.* at 189-190. The appellate court therefore remanded the case on this issue and for the trial court to correct its judgment entry of sentence which ordered restitution in a lump sum but did not specify the recipients of the amount of restitution. *Id.*

On November 24, 2010, the trial court again issued a nunc pro tunc judgment entry of sentence specifying the victims owed the specific amounts of restitution, and indicating that the Charles Crane Agency was not eligible for restitution. ECF Dkt. #9-1 at 195. Petitioner again appealed, asserting that the trial court erred by failing to enter a final, appealable order because the trial court failed to provide a final total amount of restitution in its order and failed to disclose the recipient victim of the Ohio Victims of Crime Compensation Fund. *Id*. at 198.

On June 27, 2011, the Ohio appellate court issued a decision finding no error in the trial court's latest sentencing entry concerning restitution, but it did sua sponte find an error in the trial court's entry regarding the imposition of post-release control. ECF Dkt. #9-1 at 197-199. The Ohio appellate court remanded Petitioner's case only for resentencing concerning the issue of post-release control. *Id*. at 199-200. The appellate court specifically found that the remainder of Petitioner's sentence remained valid pursuant to res judicata. *Id*. at 200.

On July 18, 2011, Petitioner pro se filed a motion to clarify his sentence in the trial court. ECF Dkt. #9-1 at 202. He asserted that the order of restitution was not clear on how much restitution was to be paid to the Ohio Victims of Crime Compensation Fund. *Id.* The State of Ohio opposed the motion, finding that the court's order was clear as to the amount of restitution owed. *Id*. at 209.

On November 7, 2011, Petitioner pro se filed a motion for resentencing in the trial court. ECF Dkt. #9-1 at 210-213. Petitioner asserted that the court should merge the aggravated robbery with a firearm specification, tampering with evidence, and aggravated drug trafficking convictions because they are allied offenses of similar import. *Id*. The State of Ohio opposed the motion. *Id.* at 214-217.

On November 21, 2011, the trial court issued a judgment entry indicating that it held a hearing addressing numerous issues, including Petitioner's motion to merge the offenses, and ordered closing briefs on the issue. ECF Dkt. #9-1 at 218-219. The trial court also addressed the Ohio appellate court's remand order concerning the imposition of post-release control. *Id*. at 219. Petitioner and the State of Ohio filed briefs concerning the merging of offenses. *Id.* at 221-260.

On December 20, 2011, and December 21, 2011, Petitioner filed notices of appeal of the trial court's November 21, 2011 judgment entry, one appeal for each trial court case number. ECF Dkt. #9-1 at 263. The Ohio appellate court consolidated the cases for appeal. *Id.* at 271.

On January 3, 2012, the trial court issued a decision denying Petitioner's motion to merge offenses, finding that the Ohio appellate court only remanded for post-release control issues and the offenses were otherwise separate and distinct offenses. ECF Dkt. #9-1 at 261-262.

On January 30, 2012, Petitioner filed a notice of appeal of the trial court's January 3, 2012 judgment to the Third District appellate court. ECF Dkt. #9-1 at 272.

On April 2, 2012, Petitioner, through counsel, filed a motion to consolidate his appeals. ECF Dkt. #9-1 at 280-287. The Ohio appellate court granted the motion and consolidated the cases for appeal. *Id*. at 288. In his appellate briefs Petitioner, through counsel, asserted the following assignments of error:

> 1. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT VIOLATED THE APPELLANT'S CONSTITUTIONAL RIGHTS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
>
> 2. THE TRIAL COURT COMMITTED A REVERSIBLE ERROR WHEN IT FAILED TO MERGE, FOR SENTENCING PURPOSES, THE CHARGES OF "AGGRAVATED TRAFFICKING IN DRUGS" AND "AGGRAVATED POSSESSION OF DRUGS", AS THEY ARE ALLIED OFFENSES OF SIMILAR IMPORT PURSUANT TO R.C. 2941.25(A).

> 3. THE TRIAL COURT COMMITTED A REVERSIBLE ERROR WHEN IT FAILED TO MERGE, FOR SENTENCING PURPOSES, THE CHARGES OF "TAMPERING WITH EVIDENCE" AND "COMPLICITY TO TAMPERING WITH EVIDENCE", AS THEY ARE ALLIED OFFENSES OF SIMILAR IMPORT PURSUANT TO R.C. 2941.25(A).
>
> 4. THE TRIAL COURT COMMITTED A REVERSIBLE ERROR WHEN IT DEPRIVED THE DEFENDANT OF HIS FUNDAMENTAL RIGHT TO DUE PROCESS OF LAW GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES OF AMERICA.

*Id.* at 290-299; ECF Dkt. #9-2 at 10-88. Petitioner later withdrew the last assignment of error. ECF Dkt. #9-2 at 89- 90. The State of Ohio filed an appellate brief and Petitioner filed replies. ECF Dkt. #9-2 at 91-163.

On June 4, 2012, the Ohio appellate court noted that the appeal was the fourth of Petitioner, with the prior three appeals concerning reversals for sentencing issues. ECF Dkt. 9-2 at 164. The court ruled on Petitioner's assignment of error and affirmed the trial court's judgment. *Id*. at 165-183.

### 4. Motion for Issuance of Final Appealable Order

On April 11, 2014, Petitioner pro se filed a motion in the trial court for the issuance of a final appealable order and a motion for sentencing. ECF Dkt. #9-2 at 184-196. Petitioner asserted that all of the trial court's sentencing entries were not final because they contained defects and did not mention the offenses for which he was convicted. *Id.*

On May 2, 2014, Petitioner filed another motion for sentencing in the trial court, asserting that an unreasonable delay in his sentencing rendered his sentence void. ECF Dkt. #9-2 at 197-200.

On June 12, 2014, Petitioner pro se filed a motion for confession of judgment on the unopposed motions that he filed. ECF Dkt. #9-2 at 201-202.

On June 17, 2014, the trial court issued a judgment entry denying Petitioner's motions and findings that the court complied with the sentencing requirements. ECF Dkt. #9-2 at 203-204.

On July 3, 2014, Petitioner filed a notice of appeal to the Third District Court of Appeals of the trial court's June 17, 2014 judgment. ECF Dkt. #9-2 at 208-216. In his appellate brief filed with counsel, Petitioner asserted the following assignments of error:

> 1. The Trial Court Erred in Issuing Multiple Documents to Render a Judgment of Conviction, Thereby Rendering No Appealable Order.

> 2. The Trial Court Erred When it Sentenced the Defendant/Appellant to Serve 5 Years of Mandatory Post Release Control Without First Including in the Same Judgment Entry an Imposing of Underlying Sentencing.
>
> 3. Whether the Trial Court's Errors Violated the Appellant's Constitutional Protections Against Double Jeopardy.

*Id*. at 217-227. Counsel thereafter filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). *Id.* at 228.

On October 20, 2014, the Ohio appellate court sent a letter to Petitioner with counsel's appellate brief informing him that counsel requested to withdraw pursuant to *Anders* and Petitioner could file his own brief on appeal. ECF Dkt. #9-2 at 233. Petitioner filed a brief on November 6, 2014 pro se and asserted the following assignments of error:

> 1. Whether appointed appellate counsel's characterization of ["Brief of Appellant"] as an Anders-brief is appropriate where the issues tendered by counsel clearly present a complex of colorable claims for relief under Ohio law and multiple Amendments to the United States Constitution. see generally: State v. Beasley (1984) 14 Ohio St.3d 74, *75.
>
> 2. Whether 'other errors'[sic] evidence evident in the record constitute 'plain error'[sic] as defined in: Crim. R. 52(B). *compare State v. Williamson, 2014 Ohio App. LEXIS 3830, at : [*P13]; and, State v. Foster, 109 Ohio St. 3d 1. see also: Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 [State v. Anderson, 2006 Ohio 5431 (8th Dist.)].

*Id*. at 234-242.

On February 20, 2015, the Ohio appellate court found no merit to Petitioner's appeals and concluded that the trial court's judgment entry of November 21, 2011 was a final appealable order. ECF Dkt. #9-2 at 243-246.

On March 30, 2015, Petitioner pro se filed a notice of appeal of the appellate court's February 20, 2015 decision to the Supreme Court of Ohio. ECF Dkt. #9-2 at 247. In his memorandum in support of jurisdiction, Petitioner presented the following propositions of law:

> 1. Whether 'multiple documents'[sic[ may be used to constitute a final appealable order. see: State v. Baker, 119 Ohio St.3d 197; O.R.C. § 2505.02; and, Ohio Const. Art. IV, Section 3(B)(2). see also: State v. Stults, 195 Ohio App. 3d 488, at: HN4
>
> 2. Whether a document informing an offender that his sentence includes a (5) five year mandatory period of postrelease control and fails to include a criminal sentence implicates due process and renders the attempted judgment a mere nullity and void. see: State v. Beasley (1984), 14 Ohio St.3d 74, *75; and, State ex rel. Post v. Speck, 2010 WL 193954 (3 Dist.)

3. Whether a trial court's failure to 'inquire' and 'determine'[sic] whether the multiple counts constitute two or more allied offenses of similar import, renders the attempted judgment a mere nullity and void (for want of statutory compliance) and offends the Fifth Amendment prohibition against 'double jeopardy.'[sic] see: O.R.C. § 2941.25(A)

4. Whether the trial court's failure to advise defendant as per the consequences of a violation of a postrelease control sanction, O.R.C. § 2943.032(E); and, Wood v. Telb (2000), 89 Ohio St.3d 504, 511, renders the attempted sentence a mere nullity and void, and implicates Crim. R. 11(C)(2)(a) thereby rendering the underlying guilty plea far less that the required knowing, intelligent, and voluntarily made requirement. see: State v. Boswell, 121 Ohio St.3d 575; and, State v. Sarkozy, ___ Ohio St.3d ___ (citation omitted)

5. Whether appointed appellate counsel's performance fell below an objective standard of reasonableness where counsel failed to raise a complex of clear and obvious 'plain errors' [sic] affective substantial rights. see: State v. Murnahan, 63 Ohio St.2d 60; Strickland v. Washington, 466 U.S. 668; and, State v. Kish, 2014 Ohio 669, at : HN1 and HN2. see also Crim.R. 52(B).

*Id.* at 249-270.

On July 8, 2015, the Supreme Court of Ohio declined to accept jurisdiction of Petitioner's appeal. ECF Dkt. #9-2 at 271.

### **5. Motion for Leave to File a Motion for New Trial**

On April 16, 2015, Petitioner filed a motion in the trial court for leave to file a motion for a new trial. ECF Dkt. #9-2 at 272-285. Petitioner asserted that he had newly discovered evidence which included an affidavit by a Christ Festler who had confessed on January 10, 2012 to the robbery

of the Medicine Shoppe on June 23, 2008. *Id*. at 273. Petitioner asserted that he had a second piece of newly discovered evidence involving prosecutors withholding exculpatory evidence, prosecutor misconduct, witness misconduct and defense counsel misconduct. *Id.* at 274. Petitioner also filed a supplement to his motion. ECF Dkt. #9-3 at 10-15. He also filed a motion for the judge to recuse himself. *Id.* at 16-18.

On May 11, 2015, the trial court denied Petitioner's motions without a hearing. ECF Dkt. #9-3 at 19.

On June 1, 2015, Petitioner pro se filed notices of appeal to the Third District Court of Appeals. ECF Dkt. #9-3 at 20. The Ohio appellate court again consolidated the appeals. *Id.* at 26. In his appellate brief filed through counsel, Petitioner asserted the following assignment of error:

-10-

> 1. The Trial Court erred in denying Appellant's motion for leave to file a motion for a new trial under Crim. R. 33.

*Id.* at 27-36. The State of Ohio filed an appellate brief. *Id*. at 37-54.

On November 3, 2015, the Ohio appellate court issued a judgment entry affirming the trial court's ruling on the motion for leave to file a motion for new trial, addressing the only assertion that Petitioner raised relating to this motion on appeal, that newly discovered evidence of the person who allegedly committed the armed robbery for which he was convicted. ECF Dkt. #9-3 at 55-59. The appellate court upheld the trial court's determination, noting that Petitioner had the affidavit of confession on January 10, 2012 and did not file his motion for leave based upon newly discovered evidence until April 16, 2015, some three years after he received the affidavit. *Id.* at 58-59.

On December 9, 2015, Petitioner pro se filed a notice of appeal to the Supreme Court of Ohio. ECF Dkt. #9-3 at 63-64. In his memorandum in support of jurisdiction filed pro se, Petitioner asserts the following proposition of law:

> Trial Court erred when denying Appellant's motion for leave to file a new trial motion based upon affidavits in support of Appellant's innocence.

*Id*. at 66-70.

On March 23, 2016, the Supreme Court of Ohio declined to accept jurisdiction of Petitioner's appeal. ECF Dkt. #9-3 at 87.

### 6. **Motion for Reopening Pursuant to Ohio Appellate Rule 26(B)**

On December 18, 2015, Petitioner pro se filed a motion in the Ohio Third District Court of Appeals asserting the following assignments of error:

1. Appellate Counsel Was Ineffective For Not Raising As An Error The Third District Court Assignment To An Accelerated Docket.

2. Appellate Counsel Was Ineffective For Not Raising As An Error Conflict Of Interest With Witnesses[sic] Prior Criminal History.

3. Appellate Counsel Was Ineffective For Not Raising As An Error Prosecutor Making Probable Cause Determination.

4. Appellate Counsel Was Ineffective For Not Raising As An Error The Hidden Immunity Agreement For State's Witness.

5. Appellate Counsel Was Ineffective For Not Raising As An Error Misconduct By State's Witness And Prosecutor.

*Id*. at 89-102.

On January 22, 2016, the Ohio appellate court denied Petitioner's application to reopen, finding that Rule 26(B) did not apply because Petitioner was seeking to reopen an appeal of a judgment denying a motion and not the appeal of the judgment of his conviction and sentence. ECF Dkt. #9-3 at 109. The appellate court also found that Petitioner failed to show any genuine issue as to whether he was deprived of the effective assistance of appellate counsel. *Id*.

On February 26, 2016, Petitioner filed a notice of appeal to the Ohio Supreme Court. ECF Dkt. #9-3 at 111. In his memorandum in support of jurisdiction, Petitioner asserted the following propositions of law:

> 1. Appellate Counsel Was Ineffective For Not Raising As An Error The Third District Court Assignment To An Accelerated Docket.
>
> 2. Appellate Counsel Was Ineffective For Not Raising As An Error Conflict Of Interest With Witnesses[sic] Prior Criminal History.
>
> 3. Appellate Counsel Was Ineffective For Not Raising As An Error Prosecutor Making Probable Cause Determination.
>
> 4. Appellate Counsel Was Ineffective For Not Raising As An Error The Hidden Immunity Agreement For State's Witness.
>
> 5. Appellate Counsel Was Ineffective For Not Raising As An Error Misconduct By State's Witness And Prosecutor.

*Id*. at 114-131.

On May 4, 2016, the Supreme Court of Ohio declined to accept jurisdiction over Petitioner's appeal. ECF Dkt. #9-3 at 132.

## II.   28 U.S.C. § 2254 PETITION

On June 22, 2016, Petitioner pro se executed the instant petition for a writ of federal habeas corpus, which was filed with the Court on June 29, 2016. ECF Dkt. #1. Petitioner raises the following grounds for relief:

> GROUND ONE: Ineffective Assistance of Trial Counsel 5th, 6th and 14th
>
> Supporting Facts: Trial counsel failed to, disclose conflicts of interest, ignored and failed to present exculpatory scientific evidence, request first trial transcripts for second trial, failed to investigate and present properly the Lowe's video, failed to investigate and present evidence that no follow up investigations were cnnducted and that witnesses lied and made no investigation of third party guilt.

GROUND TWO: Allied Offenses in violation of Double Jeopardy. 5th Amendment

Supporting Facts: Even assuming arguendo, the sentences imposed violated hte protection[sic] against multiple op[sic] punishments for the same action in violation of the double[sic] jeopardy[sic] clause[sic] of the 5th amendment[sic].

GROUND THREE: Refusal to grant leave to file New Trial Motion in violation of 5th and 14th amendments

Supporting Facts: Despite new evidence of actual innocence and exculpatory evidence being withheld by the state, the court denied leave and even of a motion which had not even been filed in violation of a fair trial and the due process of law under the 5th and 14th amendments

GROUND FOUR: INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL in violation of the 5th, 6th and 14th amendments

Supporting facts: Appellate counsel on appeals failed to raised[sic] clearing[sic] meritorious claims including, Witness and prosecutorial misconduct, hidden immunity agreement for state's witness Prosecutor making probable cause determination attorney conflict of interest with witnesses[sic] prior criminal history and sufficiency of the evidence all of which in violation of the 5th, 6th and 14th amendments.

GROUND FIVE: Improper limiting of cross examination of Andrea Ford when it comes to letters allowed by the court he[sic] first trial when it was learned after the first trial that caused the acquittal and hung jury which violates this petitioner's right to due process and a fair trial under the 5th and 14 amendments and the confrontation clause of the 6th amendment

GROUND SIX: Prosecutorial Misconduct in violation of the 5th and 14t[sic] amendments

Supporting facts: The prosecutor improperly sat as a judge and signed the probable cause complaint initially used in the case, illicited false testimony, withheld evidence, failed to correct false tesmony[sic], withheld exculpatory evidence from defense and jury all of which violated this appellant's constitutional rights under the 14th amendments.

GROUND SEVEN: Brady Violations by state in violation of the 5th and 14th amendments

Supporting facts: The state withheld exculpatory and impeachment evidence had but for this evidence the jury would have voted to acquit. This withholding was knowingly done in violation of the 5th and 14th amendments.

GROUND EIGHT: Withheld Immunity Agreement in violation of the 5th and 14th

Supporting facts: The State knowingly withheld an immunity aggreement[sic] the prosecutor himself signed in violation of this petitioner's constitutional right to a fair trial and the due process of law guaranteed this petitioner under the 5th and 14th amendments

> GROUND NINE: Judicial Bias in violation of the 5th 8th and 14th amendments
>
> Supporting facts: The judge acted as an arm of the prosecution, ruled contrary to previous rulings on the same issues siding with all state requests, allowed perjury and false testimony denied a motion which had not even been filed yet refused to allow exculpatory evidence of actual innocence and other constitutional violations all of which violated this petitioner's constitutional rights under the 5th, 8th and 14th amendments of the US Constitution.
>
> GROUND TEN: Insufficient evidence in violation of the 5th and 14th amendments
>
> Supporting facts: Under no possible set of circumstances was constitutionally sufficient proof of all the elements of the charges presented and proven beyond a reasonable doubt violating this petitioner's constitutional rights under the 5th and 14th amendments
>
> GROUND ELEVEN: Failure to correct false testimony violating 5th and 14th amendments
>
> Supporting Facts: Prosecutor failed to correct know[sic] false testimony at trial and was constitutionally bound to do this duty violating this petitioner's constitutional rights to a fair trial and the due procedss[sic] of law under the 5th and 14th amendments

*Id*. at 5-19. Petitioner also filed a document entitled "Introduction to Action in Habeas Corpus Pursuant to § 2254" on June 22, 2016. ECF Dkt. #1-1. On December 12, 2016, Respondent filed the instant motion to dismiss Petitioner's § 2254 federal habeas corpus petition based upon untimeliness. ECF Dkt. #9. Petitioner filed a response to the motion to dismiss on February 17, 2017. ECF Dkt. #12.

### III.     PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

Respondent contends that the instant petition is time-barred and should be dismissed. ECF Dkt. #9. In general, a state prisoner seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 must comply with the statute of limitations period set forth in 28 U.S.C. § 2244, which provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts. *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003); *see* 28 U.S.C. §2244(d)(2). To determine if a state proceeding will toll the statute of limitations, the Sixth Circuit has held that:

> A state petition for post-conviction or other collateral review that does not address one or more of the grounds of the federal habeas petition in question is not a review 'with respect to the pertinent judgment or claim' within the meaning of 28 U.S.C. § 2244(d)(2), and therefore does not toll the one-year AEDPA statute of limitations.

*Austin v. Mitchell*, 200 F.3d 391, 395 (6th Cir. 1999). Further, the "tolling provision does not ... 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)).

The one-year statute of limitations under Section 2244 is subject to equitable tolling only when a petitioner shows both that he has been pursuing his rights diligently and some extraordinary circumstances prevented his timely filing of the federal habeas corpus petition. *Hall v. Warden, Lebanon Correctl. Inst.* 662 F.3d 745, 749 (6th Cir. 2005), citing *Holland v. Florida,* 560 U.S. 631m

-15-

130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010). The Sixth Circuit has stated that "federal courts sparingly bestow equitable tolling." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000); *Jurado*, 337 F.3d at 642. Whether equitable tolling is appropriate is a case-by-case analysis. *Id*. The petitioner bears the ultimate burden of persuading the court that he is entitled to equitable tolling. *Vroman*, 346 F.3d at 605.

## IV. ANALYSIS

### A. AEDPA STATUTE OF LIMITATIONS

In asserting that Petitioner has untimely filed his instant federal habeas corpus petition, Respondent correctly begins by first pointing out that Petitioner was sentenced on March 5, 2009 and appealed to the Third District Court of Appeals, which affirmed his conviction but reversed in part so that the trial court judgment entry reflected that which had occurred at the sentencing hearing as to the recipients of restitution and the amounts due them. ECF Dkt. #9-1 at 45, 165.

Numerous remands for resentencing occurred in Petitioner's state cases, but the final resentencing in the trial court occurred on November 21, 2011. ECF Dkt. #9-1 at 218. Petitioner appealed this judgment and the Ohio appellate court affirmed the trial court's judgment on June 4, 2012. ECF Dkt. #9-2 at 164-184. Petitioner did not file an appeal of the Ohio appellate court's decision to the Supreme Court of Ohio. Petitioner had 45 days within which to seek review to the Supreme Court of Ohio pursuant to Rule 7.01(A)(1)(a)(i) of the Ohio Supreme Court Rules of Practice. S.Ct.Prac. R. 7.01(A)(1)(a)(i). Thus, Petitioner's conviction and sentence became final on July 19, 2012, after the expiration of time within which Petitioner had to appeal to the Supreme Court of Ohio. Absent tolling from a properly filed petition for post-conviction relief, the AEDPA statute of limitations for filing Petitioner's § 2254 federal habeas corpus petition began running on July 20, 2012, the day after the 45-day expiration time to file in the Supreme Court of Ohio, and the AEDPA statute of limitations expired one year later on July 22, 2013.

Petitioner's next filing in any court did not occur until April 11, 2014 when he filed a motion for the issuance of a final appealable order and a motion for sentencing. ECF Dkt. #9-2 at 184-196. By the time of this filing, the AEDPA statute of limitations had already expired. Once the AEDPA statute of limitations expires, collateral petitions filed after that period cannot revive the expired limitations period. *Vroman*, 346 F.3d at 602. Accordingly, the undersigned recommends that the

Court find that Petitioner's instant federal habeas corpus petition is untimely filed.

## B. EQUITABLE TOLLING

The United States Supreme Court has held that the AEDPA statute of limitations is "subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010). Equitable tolling allows a federal habeas court to review a time-barred habeas petition "provided that 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.' " *Robinson v. Easterling*, 424 F. App'x 439, 442 (6th Cir.), *cert. denied,* 565 U.S. 964, 132 S.Ct. 456, 181 L.Ed.2d 297 (2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir.2010)). In order to be entitled to equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Holland*, 130 S.Ct. at 2562, quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). A petitioner must show that he exercised reasonable diligence in pursuing his rights, not maximum diligence. *Holland*, 130 S.Ct. at 2565.

Here, while Petitioner complains in his response to the motion to dismiss of alleged trial court errors, his many state court filings, his attempts to hire attorneys, his contacts with the Ohio Innocence Project, he nevertheless delayed in filing the instant federal habeas corpus petition and provides no reasons for failing to do so. Accordingly, the undersigned recommends that the Court find that no extraordinary circumstances prevented Petitioner from filing the instant federal habeas corpus petition.

## C. ACTUAL INNOCENCE

The Sixth Circuit Court of Appeals has also held that the Constitution requires an actual innocence exception to AEDPA's statute of limitations. *Souter v. Jones*, 395 F.3d 577, 599 (6th Cir. 2005). But "actual innocence means factual innocence, not mere legal insufficiency." *Id.* at 590 (quoting *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)).

To succeed on this theory, Petitioner must show that "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence,

-17-

trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Id*. at 324. The United States Supreme Court has cautioned that the actual innocence exception should "remain rare" and should only be applied in the "extraordinary case." *Id.* at 321.

Here, the undersigned recommends that the Court find that Petitioner is not entitled to the actual innocence exception as he fails to meet his burden of establishing his entitlement to such an exception. Petitioner states in his federal habeas corpus petition that another individual confessed to the robbery for which he was convicted and sentenced. ECF Dkt. #12 at 10. He attaches the affidavit of that individual, Christopher Ferstler, who states in the affidavit that he committed the robbery for which Petitioner was convicted in the instant case. *Id.* Petitioner further indicates that Mr. Ferstler admitted that he used the same mode of operation and disguise as those allegedly used by Petitioner in the instant case. *Id*.

Petitioner also points to a videotape that the trial court excluded from evidence which allegedly shows a later robbery of the same store by a perpetrator of the same height and weight as Petitioner who "wore the exact same gloves and shoes as the robbery suspect wore and even the same OHIO STATE HOODIE worn by the robbery suspect during the medicine Shoppe robbery this petitioner is wrongfully convicted of." *Id*. at 10-11. He further makes allegations of prosecutorial misconduct, court misconduct, and defense counsel ineffectiveness. *Id*. at 10-12.

The undersigned recommends that Court find that Petitioner's allegations of prosecutorial misconduct, court misconduct and defense counsel ineffectiveness do not constitute new reliable evidence under *Schlup*. Petitioner presents such allegations without any support. The undersigned recommends the same with regard to Petitioner's allegations regarding the videotape that was excluded by the trial court as it was an issue raised at trial and thus does not constitute new evidence.

As to Mr. Ferstler's affidavit, the undersigned recommends that the Court find that it does not meet the actual innocence standard. Mr. Ferstler indicates that he committed the robbery for which Petitioner was convicted. ECF Dkt. #1-1 at 14. He states that he did not know that anyone had been arrested for the robbery and it was not until he arrived at Mansfield prison, "got robbed in block 2B, got into a fight and went to the hole," and was placed in block 4B, when he met Petitioner, who was also in that block, and learned that Petitioner had been arrested for the crime. *Id*. at 18. Mr. Ferstler goes on to state that after he told Petitioner that he was allegedly the one who

committed the robbery, Petitioner "looked like he was going to attack me at first. But being the good person he is, he said 'I don't blame you Chris, I blame all the dirty cops and everyone else that framed me.'" *Id*. at 19.

This confessional affidavit was created after Mr. Ferstler met Petitioner in prison. ECF Dkt. #1-1 at 18-19. "[A]ffidavits from fellow inmates and family members created after trial are not sufficiently reliable evidence to support a claim of actual innocence." *Jordan v. Rapelje*, No. 11-14358, 2013 WL 766190, at *9 (E.D. Mich. Feb. 28, 2013), citing *Milton v. Secy', Dep't of Corr.*, 347 Fed. App'x 528, 531-532 (11th Cir. 2009), and *Mendez v. Graham*, No. 11–CV–5492, 2012 WL 6594456, *11–12 (E.D.N.Y. Dec. 18, 2012) (fellow inmate's affidavit which contained a confession to the federal habeas petitioner's crime that was executed after meeting petitioner in prison was not reliable).

Further, this Court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Schlup*, 513 U.S. at 332. Mr. Ferstler's affidavit of confession is dated January 10, 2012. ECF Dkt. #1-1 at 19. Petitioner indicated that he received Mr. Ferstler's affidavit after January 10, 2012. ECF Dkt. #9-2 at 273. Yet he did not file his motion for leave to file a motion for a new trial until April 16, 2015, some three years following his receipt of this affidavit of confession. *Id*. at 272. Petitioner does not explain why he waited so long before submitting the affidavit of confession. In his federal habeas corpus petition and his "Introduction to Action in Habeas Corpus Pursuant to § 2254" filing, Petitioner focuses on alleged errors during trial, prosecutorial misconduct, trial court misconduct, and defense counsel ineffectiveness. ECF Dkt. #s 1, 1-1. In his motion for a new trial, Petitioner asserts that he could not with due diligence have discovered this affidavit of confession before or during his two trials or within 120 days after the jury verdict because Mr. Ferstler did not give him the notarized affidavit until after January 10, 2012. ECF Dkt. #9-2 at 273. Again, however, in this motion, Petitioner fails to explain why he had the affidavit of confession for over three years before filing it in the trial court. *Id*.

For these reasons, the undersigned recommends that the Court find that Petitioner has not established actual innocence in order to show extraordinary circumstances warranting review of his federal habeas corpus petition despite his filing of that petition beyond the AEDPA statute of

limitations.

## V. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court GRANT Respondent's motion to dismiss Petitioner's § 2254 federal habeas corpus petition as untimely filed, not subject to equitable tolling, and otherwise not entitled to consideration under the actual innocence exception. ECF Dkt. #9. Accordingly, the undersigned recommends that the Court DISMISS Petitioner's § 2254 federal habeas corpus petition, in its entirety, with prejudice

DATE: August 21, 2017           */s/ George J. Limbert*
                                                            GEORGE J. LIMBERT
                                                            UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).